*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0225p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

KEITH B. BARANSKI, d/b/a MAGUA INDUSTRIES
(03-5582), and PARS INTERNATIONAL CORPORATION
(03-5614),

                      *Plaintiffs-Appellants,*

        *v.*

FIFTEEN UNKNOWN AGENTS OF THE BUREAU OF
ALCOHOL, TOBACCO AND FIREARMS, BRIAN DIXON,
MICHAEL R. JOHNSON, DOUGLAS R. DAWSON,
MARK S. JAMES, KARL L. STANKOVIC and WILLIAM
J. HOOVER,

                      *Defendants-Appellees.*

Nos. 03-5582/5614

>

---

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 01-00398—John G. Heyburn II, Chief District Judge.

Argued: December 7, 2005

Decided and Filed: July 3, 2006

Before: BOGGS, Chief Judge; MARTIN, BATCHELDER, DAUGHTREY, MOORE, COLE,
CLAY, GILMAN, GIBBONS, SUTTON, COOK, McKEAGUE, GRIFFIN, and NEILSON,
Circuit Judges.[*]

---

## COUNSEL

**ARGUED:** Richard E. Gardiner, Fairfax, Virginia, Saeid Shafizadeh, Louisville, Kentucky, for
Appellants. Howard S. Scher, UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellees. **ON BRIEF:** Richard E. Gardiner, Fairfax, Virginia, Saeid Shafizadeh,
Louisville, Kentucky, for Appellants. Howard S. Scher, Barbara L. Herwig, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

      SUTTON, J., delivered the opinion of the court, in which BOGGS, C. J., BATCHELDER,
GIBBONS, COOK, McKEAGUE, and GRIFFIN, JJ., joined and in which GILMAN, J., joined as
to Part II.B. GILMAN, J. (p. 14), delivered a separate opinion concurring in the judgment, in which

---

[*]The Honorable John M. Rogers, Circuit Judge, took no part in the consideration or decision of the case.

The Honorable Susan Bieke Neilson, who was a member of the panel, died on January 25, 2006.

1

DAUGHTREY, J., joined.  CLAY, J. (pp. 15-27), delivered a separate dissenting opinion in which MARTIN, MOORE, and COLE, JJ., joined and in which GILMAN, J., joined as to Part II.A.

_____

**OPINION**

_____

SUTTON, Circuit Judge.  The Fourth Amendment provides in part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  In this case, several agents of the United States Bureau of Alcohol, Tobacco and Firearms (BATF) obtained a search warrant that satisfied the particularity requirements of the Fourth Amendment at the time the magistrate issued the warrant.  But by the time the agents conducted the search, a supporting affidavit that was cross-referenced in the warrant and that particularly described the things to be seized had been placed under seal and thus was not present during the search.

In this money-damages action filed against the agents under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), Keith Baranski and Pars International Corporation contend that the agents' search of a warehouse owned by Pars and seizure of weapons owned by Baranski violated their Fourth Amendment rights.  Because the warrant described the items to be seized when the magistrate "issue[d]" it, the warrant satisfied the particularity requirements of the Fourth Amendment.  And because the agents conducted the search in a reasonable manner, they did not otherwise violate the Fourth Amendment.  We therefore affirm the judgment of the district court in favor of the agents.

I.

In September 1999, Keith Baranski, a licensed firearms dealer, began importing machine guns from Eastern European countries.  *United States v. Baranski*, 75 Fed. App'x 566, 567 (8th Cir. 2003).  He imported the guns through a bonded customs warehouse owned by Pars and located in Louisville, Kentucky, where federal law required Baranski to keep the guns until he could sell them to eligible law enforcement departments.

Instead of selling the guns to eligible buyers, however, Baranski obtained forged letters of interest from a police chief located in Farber, Missouri, so that he could remove the weapons from the warehouse and could sell them illegally.  BATF agent Michael Johnson uncovered the scheme when he found documents in a Missouri gun dealer's shop that linked Baranski to the dealer and when he learned that one of Baranski's letters of interest was forged, *id*. at 567.

On April 10, 2001, Johnson applied for a search warrant from a magistrate judge in Louisville, Kentucky, to allow him to search for and seize "about 425" weapons still being held by Baranski at the Pars warehouse.  JA 120.  As part of the warrant application, Johnson prepared an affidavit explaining Baranski's scheme, detailing the probable cause for the search, identifying the bonded section of the warehouse as the place to be searched and identifying the machine guns as the items to be seized.  In the location on the search warrant for describing the things to be seized, the warrant did not separately list those items but said "See Attached Affidavit," which described the things to be seized.  JA 91.

That same day, the magistrate judge approved the warrant.  In doing so, he separately signed both the search warrant and the attached affidavit, then sealed the affidavit to protect the BATF's confidential sources.  D. Ct. Op. at 2.

On April 11, 2001, Johnson led approximately 20 BATF agents to the Pars warehouse to execute the warrant. Upon reaching the warehouse, the agents were met by Saeid Shafizadeh, an attorney for Pars, who asked to see the warrant. After reading the warrant, Shafizadeh asked to see the affidavit, at which point the officers told him that it was under seal. One agent then told Shafizadeh that they were looking for firearms owned by Baranski (or by his company, Magua Industries) located in the bonded section of the warehouse. Shafizadeh complained that the search was illegal because the warrant itself failed to describe with particularity what the agents could seize, but nonetheless cooperated with the agents. At Shafizadeh's direction, several United States Customs agents, who had recently inventoried the warehouse, escorted the agents to the basement of the building where the bonded warehouse was located. Once in the bonded warehouse, the agents seized 372 machine guns and 12 crates of firearm accessories belonging to Baranski. *Id.* Upon leaving the warehouse, the agents left an inventory of the seized items, *id.*, and a copy of the search warrant with Shafizadeh, *id.*

On July 5, 2001, Baranski and Pars filed this money-damages action in the United States District Court for the Western District of Kentucky. As pertinent here, they (1) brought a *Bivens* claim against Johnson and several named and unnamed agents, contending that the agents had violated their Fourth Amendment rights and (2) separately moved to unseal the affidavit referenced in the search warrant. On March 22, 2002, the district court denied plaintiffs' motion to unseal the affidavit and stayed the *Bivens* action pending the completion of the criminal investigation of Baranski.

On July 3, 2002, a grand jury based in the Eastern District of Missouri indicted Baranski for making "a false entry on any application, return, or record required by [the firearm importation laws], knowing such entry to be false." 26 U.S.C. § 5861(l). The indictment also sought criminal forfeiture of the guns and accessories seized in the April 11 search. Baranski moved to suppress the machine guns and accessories on Fourth Amendment grounds. The district court denied the motion. *United States v. Baranski*, No. 4:02-CR-361, slip op. at *4–5 (E.D. Mo. Nov. 1, 2002). On November 18, 2002, a jury found Baranski guilty of violating § 5861(l), and the court sentenced him to 60 months in prison. *Baranski*, 75 Fed. App'x at 568. Three months later, on February 27, 2003, the district court required Baranski to forfeit the weapons and accessories.

The Eighth Circuit affirmed. As to the suppression ruling, the court concluded that probable cause supported the warrant and that "[t]he warrant should not have been suppressed for lack of particularity. Although the warrant did not set out the property to be seized, the warrant referred to a sealed affidavit that described the weapons." *Baranski*, 75 Fed. App'x at 568. Any error in denying the motion to suppress, the court added, was harmless in view of the other evidence admitted against Baranski. *Id.* The court also upheld Baranski's conviction and sentence as well as the forfeiture of his property. *Id.* at 569.

After Baranski's conviction, the United States District Court for the Western District of Kentucky lifted the stay on Baranski's *Bivens* claim and unsealed agent Johnson's affidavit. On March 14, 2003, the district court granted the agents' claim of qualified immunity, holding that the search did not violate the Fourth Amendment and, alternatively, that the search did not violate clearly established Fourth Amendment law. D. Ct. Op. at 5–6.

On March 14, 2005, a panel of this court reversed the district court's grant of qualified immunity. Relying on the Supreme Court's intervening decision in *Groh v. Ramirez*, 540 U.S. 551 (2004), the panel concluded that the warrant was facially deficient because the affidavit referenced in the warrant and describing the items to be seized was under seal and was not attached to the warrant when the search was conducted. *Baranski v. Fifteen Unknown Agents*, 401 F.3d 419, 429 (6th Cir. 2005). In the absence of the affidavit, the panel concluded that the search was a warrantless one, that no exigent circumstances justified a warrantless search and that the agents had violated the

claimants' clearly established rights. *Id.* at 432–33. On August 5, 2005, the full court vacated the panel's decision and granted rehearing en banc.

II.

In *Bivens*, the Supreme Court held that individuals could "recover money damages for any injuries [they have] suffered as a result of [a federal agent's] violation of the [Constitution]." 403 U.S. at 397. As with § 1983 actions against state and local officials, the Court has held that a claimant seeking relief under *Bivens* must overcome the federal official's qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001). To overcome that immunity, claimants must show (1) that the agents violated their constitutional rights and (2) that the constitutional right at issue is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (quotations omitted); *see Flaskamp v. Dearborn Pub. Schs.*, 385 F.3d 935, 940–41 (6th Cir. 2004).

A.

The Fourth Amendment says:

[1] The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and [2] no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The first clause of the Amendment, the Reasonableness Clause, provides an overriding check on criminal investigations by the government, prohibiting all "unreasonable searches and seizures." *See Soldal v. Cook County*, 506 U.S. 56, 63 (1992); *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 357 (1931). The second clause, the Warrant Clause, explains the process for obtaining a warrant to authorize a search. *See Maryland v. Garrison*, 480 U.S. 79, 84–85 (1987); *United States v. Leon*, 468 U.S. 897, 914 (1984). The two clauses do not stand alone. A search that satisfies the Warrant Clause will generally, but not invariably, satisfy the Reasonableness Clause. *See Richards v. Wisconsin*, 520 U.S. 385, 395 (1997) (noting that despite the issuance of a warrant, "the reasonableness of the officers' decision . . . must be evaluated as of the time [of the search]"). And a search of a residence or building without a warrant is "presumptively unreasonable," *Payton v. New York*, 445 U.S. 573, 586 (1980), but will not invariably violate the Reasonableness Clause. *See id.* at 587 ("exigent circumstances" or consent may excuse the necessity of a warrant); *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665 (1989) ("[N]either a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance."). This case raises several questions about the two clauses and their relationship to each other.

*First*: were the agents required to obtain a warrant before conducting this search? The parties agree, as do we, that the Warrant Clause applies to this search and that neither the exigent-circumstances exception, consent nor any other exception to the clause excused the officers from having to obtain a warrant before conducting this search. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 311 (1978) ("The Warrant Clause of the Fourth Amendment protects commercial buildings as well as private homes.").

*Second*: when the magistrate approved this warrant, did it comply with the Warrant Clause even though the warrant itself did not describe with particularity the items to be seized but expressly incorporated an affidavit that did describe them? The parties do not dispute that: (1) the application for a warrant supplied by agent Johnson established "probable cause" that a crime had been committed and that evidence of that crime likely would be found at the place to be searched, U.S. Const. amend. IV; (2) agent Johnson "supported" the warrant application by "Oath or affirmation," *id.*; (3) the warrant "particularly describ[ed] the place to be searched"—namely, the Pars Warehouse,

*id.*; and (4) "a neutral judicial officer"—here, a magistrate—legitimately approved the warrant, *Steagald v. United States*, 451 U.S. 204, 212 (1981).

Nor have the claimants shown that the agents failed to comply with the last requirement of the Warrant Clause—that the search warrant approved by the magistrate "particularly describ[e] . . . the persons or things to be seized." U.S. Const. amend IV. The officers presented two documents to the magistrate: a one-page "Search Warrant" and a ten-page "Application and Affidavit for Search Warrant." JA 115, 116. The one-page "Search Warrant" was a form document filled out by agent Johnson that contained blank spaces for the magistrate (1) to approve and sign the warrant, (2) to state the date and time when the magistrate approved the warrant and (3) to limit the time within which the agents had authority to execute the warrant. JA 115. At the location on the form for identifying the items to be seized, agent Johnson referred to an attached affidavit ("See Attached Affidavit"), which identified the items that the agents sought permission to seize. *Id*. On appeal, no one disputes that the affidavit specifically described the items that the agents sought to find and seize. And no one disputes that agent Johnson presented both the warrant and the affidavit to the magistrate, as he independently signed each of them.

No doubt, "[t]he fact that the *application* adequately described the 'things to be seized' does not save the *warrant*" from the risk of facial invalidity because "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh*, 540 U.S. at 557. But, as *Groh* explained, "We do not say that the Fourth Amendment forbids a warrant from cross-referencing other documents." *Id*. And "[i]ndeed," as *Groh* further recognized, "most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Id.* at 557–58.

What doomed the warrant in *Groh* was not the existence of a supporting affidavit that particularly described the items to be seized, but the failure of the warrant to cross-reference the affidavit at all. "Although the application particularly described the place to be searched and the contraband petitioner expected to find, the warrant itself was less specific; it failed to identify any of the items that petitioner intended to seize." *Id*. at 554. Rather, "[i]n the portion of the form that called for a description of the 'person or property' to be seized, petitioner typed a description of respondents' two-story blue house rather than the alleged stockpile of firearms." *Id.* And "[t]he warrant did not incorporate by reference the itemized list contained in the application." *Id.* at 554–55. Because the warrant at the time of issuance did not describe with particularity the items to be seized but instead referred to a "single dwelling residence two story in height which is blue in color" as the "concealed . . . property" to be seized, *id.* at 554 n.2, the warrant on its face failed to comply with the Warrant Clause. *See* Wayne R. LaFave, *Search and Seizure* § 4.6(a), at 619 (4th ed. 2004) (noting that *Groh* "covers . . . only" the situation where the warrant "'did not describe the items to be seized *at all*'") (quoting *Groh*, 540 U.S. at 558).

No equivalent problem occurred here. This warrant explicitly incorporated the supporting affidavit; the magistrate signed the affidavit and warrant; and the affidavit described with particularity the items to be seized. Rather than generally (and unintelligibly) authorizing the seizure of a two-story blue house, *Groh*, 540 U.S. at 554, this warrant authorized the seizure of 425 machine guns. Rather than leaving reviewing courts in doubt "whether the Magistrate was aware of the scope of the search he was authorizing," *id.* at 561 n.4, this warrant made it clear that the magistrate understood and cabined the scope of the search he was authorizing. And rather than leaving reviewing courts in doubt whether the magistrate provided "written assurance that [he] actually found probable cause to search for, and to seize, every item mentioned in the affidavit," *id.* at 560, this warrant and affidavit (and the magistrate's signature on both of them) made it clear that the magistrate found that there was probable cause to support the search.

Consistent with *Groh*, all of the courts of appeals (save the Federal Circuit) have permitted warrants to cross-reference supporting affidavits and to satisfy the particularity requirement through an incorporated and attached document—at least when it comes to the validity of the warrant at the time of issuance. *See United States v. Riccardi*, 405 F.3d 852, 863 n.1 (10th Cir. 2005); *United States v. Miggins*, 302 F.3d 384, 395 (6th Cir. 2002); *United States v. Beaumont*, 972 F.2d 553, 561 (5th Cir. 1992); *United States v. Jones*, 54 F.3d 1285, 1290 (7th Cir. 1995); *United States v. Bianco*, 998 F.2d 1112, 1116–17 (2d Cir. 1993); *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993); *United States v. Washington*, 852 F.2d 803, 805 (4th Cir. 1988); *United States v. Vaughn*, 830 F.2d 1185, 1186 (D.C. Cir. 1987); *United States v. Johnson*, 690 F.2d 60, 64 (3d Cir. 1982); *United States v. Wuagneux*, 683 F.2d 1343, 1351 n.6 (11th Cir. 1982); *United States v. Klein*, 565 F.2d 183, 186 n.3 (1st Cir. 1977); *United States v. Johnson*, 541 F.2d 1311, 1315 (8th Cir. 1976). We stand by this view today.

*Third*: even if the warrant satisfied the Warrant Clause at the time of issuance, did the ensuing search become warrantless, and therefore "presumptively unreasonable," *Payton*, 445 U.S. at 586, due to the manner in which the agents conducted the search? We think not.

The Warrant Clause contains four textual requirements, each of which places restrictions on the *issuance* of a warrant. "[N]o Warrants shall *issue*," it says, "but upon [1] probable cause, [2] supported by Oath or affirmation, and [3] particularly describing the place to be searched, and [4] the persons or things to be seized." U.S. Const. amend. IV (emphasis added). By their terms, each of these requirements must be satisfied upon the "issu[ance]" of the warrant, and nothing about the text of the clause suggests that a warrant valid upon issuance may become invalid upon execution when the scope and timing of the search is conducted in accordance with the terms of the warrant.

Nor do the historical purposes of the clause suggest otherwise. The chief purpose of the particularity requirement was to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed. *See Stanford v. Texas*, 379 U.S. 476, 481 (1965) (outlining the history of "officers acting under the unbridled authority of a general warrant" and noting the need for independent approval of warrants by magistrates); *see also Muehler v. Mena*, 125 S. Ct. 1465, 1469 (2005) ("[T]he presence of a warrant assures that a neutral magistrate has determined that probable cause exists . . . ."); *Marron v. United States*, 275 U.S. 192, 196 (1927) ("The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another.").

The "purpose of the particularity requirement," it is true, is not confined to the "prevention of general searches." *Groh*, 540 U.S. at 561. "A particular warrant also 'assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.'" *Id.* (quoting *United States v. Chadwick*, 433 U.S. 1, 9 (1977)). When the magistrate approved this warrant, however, it contained these assurances, as it restricted the items to be seized to weapons owned by Baranski. *Cf. United States v. Grubbs*, 126 S. Ct. 1494, 1501 (2006) (noting that "'the requirement of particular description does not protect an interest in monitoring searches'") (quoting *United States v. Stefonek*, 179 F.3d 1030, 1034 (7th Cir. 1999)).

Consistent with the language of the Warrant Clause and the historical purposes behind it, a search conducted in accordance with a valid warrant does not become warrantless, and therefore "presumptively unreasonable," due to the manner in which the officers conducted the search. As the Court has "[r]ecogniz[ed]," "the specificity required by the [Warrant Clause of the] Fourth Amendment does not generally extend to the means by which warrants are executed." *Dalia v. United States*, 441 U.S. 238, 257 (1979); *see Grubbs*, 126 S. Ct. at 1500–01 (noting that the "words of the Fourth Amendment" do not "'suggest[] that, in addition to the [requirements set forth in the

text], search warrants also must include a specification of the precise manner in which they are to be executed'") (quoting *Dalia*, 441 U.S. at 255) (brackets supplied by *Grubbs*); *see also United States v. Basham*, 268 F.3d 1199, 1204 (10th Cir. 2001) ("[T]he question of whether the warrant itself is valid" "is an entirely different matter" from the more general Fourth Amendment reasonableness inquiry) (internal quotation marks omitted).

In contending that the agents conducted a warrantless search in this instance, Baranski and Pars target three alleged shortcomings: the agents did not hand Pars' attorney a copy of the affidavit when he asked for it at the outset of the search; the agents did not bring the affidavit with them when they conducted the search; and the agents did not leave a copy of the affidavit with the warrant after the search. *Groh*, they claim, supports all three requirements and, most importantly, makes a search that fails to comply with them a warrantless, and thus "presumptively unreasonable," search. We do not agree.

The warrant in *Groh*, as shown, did not satisfy the particularity requirements of the Warrant Clause because it did not incorporate the affidavit that accurately described the items to be seized. Without something on the face of the warrant indicating the particulars of the items to be seized or incorporating a document that described those particulars, the Court reasoned that it could not "know whether the Magistrate was aware of the scope of the search he was authorizing." *Groh*, 540 U.S. at 561 n.4. Because the warrant "did not describe the items to be seized at *all*," the Court concluded that "the warrant was so obviously deficient that we must regard the search as 'warrantless' within the meaning of our case law." *Id*. at 558. No such problem infected this warrant.

Baranski and Pars persist that *Groh* is more than just a case about satisfying the Warrant Clause at the time of issuance through an incorporated affidavit. As they read the decision, it establishes an incorporate-and-produce and an incorporate-and-accompany requirement with respect to supporting affidavits: Not only must the warrant expressly incorporate the attached affidavit, which happened here, but the affidavit also (1) must be given to an occupant who requests it at the outset of the search, (2) must accompany the agents during the search and (3) must be left at the scene of the search—all three of which did not happen here.

*Groh*, as an initial answer, provides scant support for holding that the failure to produce a warrant at the outset of a search makes the search a warrantless one. The Court acknowledged that the Fourth Amendment *does not* compel officers to present a warrant before a search. *Id*. at 562 n.5 ("[N]either the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search."). And the Court disclaimed resolving whether officers must produce a warrant, to say nothing of a supporting affidavit, when the occupant requests it at the outset of the search. *See id*. ("Whether it would be unreasonable to refuse a request to furnish the warrant at the outset of the search when, as in this case, an occupant of the premises is present and poses no threat to the officers' safe and effective performance of their mission, is a question that this case does not present."). Even at that, the Court left open only the possibility that it would be "unreasonable" to decline such a request, not that the search would become warrantless if the agents declined such a request.

In the aftermath of the Court's most recent decision in this area, *United States v. Grubbs*, 126 S. Ct. 1494 (2006), the possibility that the *Warrant Clause* requires officers to produce a copy of the warrant (and any affidavit) at the outset of the search seems even less plausible. One question presented by *Grubbs* was whether officers must list the "triggering condition" in an anticipatory warrant in order to permit the owner of the property to "polic[e] the officers' conduct." 126 S. Ct. at 1501 (quotation omitted). In rejecting that argument, the Court reasoned that "[t]his argument assumes that the executing officer must present the property owner with a copy of the warrant before conducting his search." *Id.* Yet there is no such requirement, the Court observed, and "'[t]he absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until

the search has ended, is . . . evidence that the requirement of particular description does not protect an interest in monitoring searches.'" *Id.* (ellipses supplied by *Grubbs*) (quoting *Stefonek*, 179 F.3d at 1034).

Nor, at any rate, would such a rigid rule lend itself to sensible application. Aside from the oddity of having the constitutionality of a search turn on the serendipity of whether the occupants happen to be present when the officers arrive, there doubtless will be times when officers could not reasonably be expected to comply with such a requirement. In carrying out a search, officers need not cooperate with uncooperative property owners or those who threaten to put the search at risk. *See Wilson v. Arkansas*, 514 U.S. 927, 936 (1995); *see also United States v. Banks*, 540 U.S. 31, 38 (2003). While the decision of officers not to present an incorporated affidavit to the occupant upon request may be a relevant factor in determining the reasonableness of a search, it does not make a warrant-supported search a warrantless one.

*Groh* contains some language in support of plaintiffs' second argument—that an incorporated affidavit must accompany the warrant at the time of the search. *See* 540 U.S. at 558 ("But in this case the warrant did not incorporate other documents by reference, nor did either the affidavit or the application (which had been placed under seal) accompany the warrant."); *id.* at 560 ("But unless the particular items described in the affidavit are also set forth in the warrant itself (or at least incorporated by reference, and the affidavit present at the search), there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit.").

Read in context, however, these passages do not establish the bright-line rule that Baranski and Pars advocate. As we have shown, *Groh* turns on the facial invalidity of the warrant, not the manner in which the officers conducted the search. Any doubt about the holding of *Groh* is removed when one reads the second part of the decision. There, in determining whether the officers had violated the claimants' clearly established constitutional rights, the Court indicated that the constitutional violation at issue was the facial insufficiency of the warrant, not the failure to incorporate the affidavit *and* bring it during the search. *See id.* at 563 ("Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid."); *id.* at 564 ("[E]ven a cursory reading of the warrant in this case—perhaps just a simple glance—would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal."); *id.* ("[A]bsent consent or exigency, a warrantless search of the home is presumptively unconstitutional.").

What, then, should a lower court make of *Groh*'s reference to an incorporated affidavit being "present" at the search? One possibility is that the Court's reference to the absence of incorporation *and* to the absence of an accompanying affidavit was necessary to resolve the facial-invalidity problem at hand. In other words, the reasoning of *Groh* (though perhaps not the result) might well have been different if the facially defective warrant had been attached to an affidavit signed by the magistrate that clearly corrected the omission and that accompanied the warrant during the search. The reference to the absence of any attached affidavit thus ensured that the Court was not directly resolving that issue.

Another possibility is that the Court was suggesting that officers generally should bring an incorporated affidavit (or an authenticated summary of the items to be seized) with them during the search and that the failure to do so may be *a factor* in determining whether the search was reasonable, two points with which we agree. If, say, a search involved otherwise fungible property that contained discrete identifying markers (*e.g.*, currency identified by serial number) and if only an incorporated affidavit described those markers, the absence of the affidavit on the scene could render the search unreasonable. *Cf. Jones*, 54 F.3d at 1292. But that does not establish that the absence of an

incorporated affidavit during a search makes the search a presumptively unreasonable one in all settings, no matter whether the property owner was there, no matter how readily identifiable the subject of the search. The salient point is that *Groh* did not establish a one-size-fits-all requirement that affidavits must accompany all searches to prevent a lawfully authorized search from becoming a warrantless one.

Neither can we accept plaintiffs' last contention—that the Constitution demands that agents leave incorporated affidavits (or authenticated summaries of them) at the scene of the search on pain of the search being treated as warrantless. In some settings, such an unyielding requirement would make little sense. How, for example, would officers execute a warrant for a wiretap? The Constitution does not require officers to leave a copy of the warrant next to every phone upon which a bug has been placed or next to every phone that has been wiretapped. *See Dalia*, 441 U.S. at 248 (holding that the Fourth Amendment does not require notice of the execution of warrants that depend on covert action to be successful). At the same time that *Groh* acknowledged this reality, *see* 540 U.S. at 562 n.5, it never said that the failure to leave an incorporated affidavit (or authenticated summary) at the scene of the search renders the search presumptively unreasonable.

Rule 41(f) of the Federal Rules of Criminal Procedure also fails to supply any traction for this argument. *See* Fed. R. Crim. P. 41(f)(3)(A) (indicating that an officer must "give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken"). For one, the warrant and inventory were left with Shafizadeh after the search, and plaintiffs have not identified any case law establishing that the failure to leave a sealed affidavit with the warrant violates Rule 41(f). For another, even a violation of the Federal Rules by itself would not establish a constitutional violation, which is what plaintiffs must establish in order to obtain money damages in this *Bivens* action. *See Bivens*, 403 U.S. at 397.

In the end, *Groh* does not alter the traditional assumption "that the specificity required by the [Warrant Clause of the] Fourth Amendment does not generally extend to the means by which warrants are executed." *Dalia*, 441 U.S. at 257. In contrast to presumptively fatal failures to comply with the Warrant Clause's particularity requirement, the question here is whether the agents acted reasonably in conducting the search under the totality of the circumstances. The latter inquiry does not submit to an across-the-board requirement, and we see no indication in *Groh* or in any other decision that the Court meant to establish one. To say that a warrant satisfies the Warrant Clause upon issuance, however, by no means establishes that a search satisfies the Reasonableness Clause upon execution, which prompts the last question presented.

*Fourth*: even if the agents satisfied the Warrant Clause, did they nonetheless violate the Reasonableness Clause when they conducted the search? We conclude that they did not.

When a search requires a warrant, the failure to satisfy the Warrant Clause makes the search "presumptively," if not per se, "unreasonable." *Payton*, 445 U.S. at 586; *see Katz v. United States*, 389 U.S. 347, 357 (1967). The opposite, however, is neither presumptively nor absolutely true. Even when officers have complied with the Warrant Clause in obtaining authorization for a search, that does not insulate the search from challenge. While a warrant may circumscribe an officer's authority, that does not mean the officer adhered to that limitation and does not mean that what started as a particularized search did not become a general one. To satisfy the Reasonableness Clause, officers not only must obtain a valid warrant but they also must conduct the search in a reasonable manner. *See Dalia*, 441 U.S. at 257 ("[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant—subject of course to the general Fourth Amendment protection 'against unreasonable searches and seizures.'") (footnote omitted). "The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant." *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (citation omitted).

Illustrating the point: in establishing that officers generally must alert homeowners to their presence before executing a search warrant, the Court has noted that "an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment" even though the search was supported by a valid search warrant. *Wilson*, 514 U.S. at 934; *see Banks*, 540 U.S. at 36 (same); *Richards*, 520 U.S. at 387 (same). This limitation on the execution of a valid search warrant extends beyond the setting of the Court's knock-and-announce rulings, and we see no reason why it would not extend here. *See Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979) (holding that where a judge accompanies police officers on a search to broaden the scope of the warrant as the search progresses, the search is unreasonable despite an initially valid warrant); *see also United States v. Tucker*, 313 F.3d 1259, 1265 (10th Cir. 2002) (noting that under certain circumstances a nighttime search may be unreasonable despite the issuance of a valid warrant).

In answering the fundamental inquiry of whether *this* search was reasonable, we of course look at "the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). When agent Johnson and the other agents arrived at the scene, they had a valid search warrant, which they gave to Shafizadeh upon arriving at the warehouse and upon asking to enter it. The face of the warrant showed that an independent judicial officer had approved the search of the bonded section of the warehouse. When Shafizadeh asked to see a copy of the incorporated affidavit, agent Johnson, who wrote and signed the affidavit, explained that it was under seal but then proceeded to tell him orally what the warrant and affidavit authorized them to seize, namely 425 machine guns owned by Baranski and located in the customs bonded portion of the warehouse. *Cf. Groh*, 540 U.S. at 563 (reasoning that the officers orally explained to the property owner only that they were looking for "'an explosive device in a box,'" which was "little better than no guidance at all"); *id.* at 562 (declining to resolve whether the presence of the affiant to explain the scope of the search may provide "all of the notice that a proper warrant would have accorded").

There was nothing unduly complex about the object of the search that would have prevented agent Johnson from remembering precisely what he had authority to search for and to seize. *Cf. Jones*, 54 F.3d at 1292; *United States v. Stefonek*, 179 F.3d 1030, 1034–35 (7th Cir. 1999) (noting that the warrant may prove a useful tool to the executing officers in ensuring that their search remained within the scope approved by the magistrate and concluding that these considerations were useful for determining the reasonableness of a search but did not make them constitutionally required). And no suggestion has been raised that producing the affidavit was necessary to defuse a potential "breach[] of the peace." *Stefonek*, 179 F.3d at 1035.

The record also shows that once Shafizadeh agreed to let the agents into the warehouse, the agents conducted the search in a reasonable manner. The day before the search, agent Johnson met with the other agents and laid out a plan for executing the warrant, which included a description of the guns to be seized, a map of the warehouse, the specific location within the warehouse where the guns would be seized, the identity of Shafizadeh as the appropriate warehouse contact and other information relevant to the search. On the day of the search, agent Johnson helped to direct the officers in seizing Baranski's machine guns. *See United States v. Dale*, 991 F.2d 819, 848 (D.C. Cir. 1993) (noting that the presence of the agent "who prepared the affidavit and obtained the warrant" to "over[see] the warrant's execution and guide[] the participating agents" "sufficiently limited the discretion of the executing agents").

The agents seized no more than was authorized by the warrant—Baranski's machine guns and associated crates of accessories—and searched no more of the warehouse than was necessary to seize these weapons. When the search was complete, the agents left a copy of the warrant and a complete inventory of items seized, both of which provided Baranski and Pars all of the information they needed to attempt to unseal or partly unseal the affidavit. By all accounts, the agents conducted the search consistently with the constitutional guidelines set out in Supreme Court precedent and made efforts both to circumscribe their search to the approved scope of the warrant and to diminish the

likelihood of conflict at the scene. *Cf. Frisby v. United States*, 79 F.3d 29, 32 (6th Cir. 1996) ("Here, plaintiff was not prejudiced by the agents' failure to furnish him with Attachment A prior to the search. Agents conducted the search in accordance with the warrant and seized only those items enumerated in Attachment A. Further, agents provided plaintiff with an inventory of seized property prior to leaving his premises and subsequently provided him with a copy of Attachment A. Finally, plaintiff's legal remedies were in no way affected by the unintentional failure to serve him with a copy of Attachment A prior to the search."); *Dale*, 991 F.2d at 848 (per curiam, including then-Judge Ruth Bader Ginsburg) ("Agent Shintani, who prepared the affidavit and obtained the warrant, was present at the search, oversaw the warrant's execution and guided the participating agents in seizing documents to conform the search to her understanding of the warrant's requirements. While it is not altogether clear that the affidavit accompanied the warrant at the search, we are satisfied that the precautions taken by the government sufficiently limited the discretion of the executing agents.").

Although it is true that the agents did not supply a written document explaining what they were authorized to seize, they orally told the owner's agent what they had permission to seize and left him with ample information to obtain the affidavit or an authenticated summary of it. Indeed, while Baranski and Pars filed a motion to unseal the affidavit on July 5, 2001, which was eventually granted, they never sought in the interim to obtain an authenticated summary of the affidavit itemizing the property that could be seized—undermining any claim that they were prejudiced by the method of the agents' search.

This approach, moreover, is consistent with our own decisions. *See Frisby*, 79 F.3d at 31–32 (concluding that where the affiant is at the scene, the warrant is validly approved and the search is confined to the approved corners of the warrant, the search is valid despite the absence of the affidavit); *United States v. Gahagan*, 865 F.2d 1490, 1497 (6th Cir. 1989) (concluding that where the warrant is valid, the search is conducted in accordance with the warrant and the affiant is there to answer questions and direct his fellow officers, the search is valid despite the absence of the affidavit); *cf. Dale*, 991 F.2d at 847–48 (concluding that the availability of the affiant at the scene of the search to answer the questions of both the property owners and the executing officers was sufficient to excuse the absence of the affidavit during the search).

Doubtless, the agents would have been wiser to bring a written summary of the items to be seized (presumably signed by the magistrate) or to list the items to be seized in the warrant itself. There seems to be little doubt (and none has been offered by the United States) that agents who choose to rely on an incorporated affidavit typically have good reason and ample means to avoid complaints like this one. But the question is whether the Fourth Amendment demands these things, even when the purposes of doing them have been satisfied and even when the failure to do them has not prejudiced the property owners. On this record and under these circumstances, we hold that no constitutional violation occurred.

B.

But even if that were not the case, even if the search violated the Fourth Amendment, it did not violate "clearly established" law. *Saucier*, 533 U.S. at 201; *see Brosseau v. Haugen*, 543 U.S. 194, 199–201 (2004) (holding that qualified immunity is appropriate unless either a precedent "squarely governs" the outcome of the case or the case is so "obvious" that "general tests . . . . 'clearly establish' the answer, even without a body of relevant case law"). A right is "clearly established," the Supreme Court has said, when it is no longer among the "hazy" area of constitutional issues that might be "reasonably misapprehend[ed]" by a law enforcement officer at the scene. *Brosseau*, 543 U.S. at 198.

One indicator that this alleged Fourth Amendment right, at a minimum, remained in a "hazy" area of constitutional meaning that law enforcement agents might "reasonably misapprehend" is the

fact that the Eighth Circuit (on plaintiff's theory) apparently "misapprehend[ed]" this area in assessing a suppression motion arising from this precise search. In Baranski's direct criminal appeal, a panel composed of Judges Melloy, R. Arnold and Fagg concluded in an unpublished per curiam opinion that "[t]he warrant should not have been suppressed for lack of particularity" under the *Leon* good-faith doctrine. *United States v. Baranski*, 75 Fed. App'x 566, 568 (8th Cir. 2003). When a sister court of appeals concludes on the exact facts presented to us that government agents acted in good faith in executing *this* warrant, it seems fair to say that the issue at a minimum involves a "hazy" area of constitutional law, one that we should be reluctant to tell agents they were delinquent in failing to appreciate. *See Groh*, 540 U.S. at 565 n.8 (noting that the *Leon* good-faith inquiry and the qualified-immunity inquiry are one and the "same.").

Even aside from this mirror-image precedent from another circuit, the prevailing law in *this* circuit would have led reasonable agents to believe that their conduct was legal at the time they conducted the search. In *Frisby v. United States*, 79 F.3d 29 (6th Cir. 1996), the government inadvertently failed, at the time of the search, to include an attached affidavit with the warrant that referenced it. Yet the agents provided an inventory, took only what they should have taken and subsequently provided the defendant with a copy of the attached affidavit. No Fourth Amendment violation occurred on these facts, we held. 79 F.3d at 32. In *United States v. Gahagan*, 865 F.2d 1490 (6th Cir. 1989), we upheld a search where the warrant did not correctly describe the place to be searched but contained an incorporated affidavit that did describe the location. *Id*. at 1497. Even though the affidavit was left behind in the police car during the search, rather than attached to the warrant, the court upheld the search. *Id*.

In an unpublished opinion decided after the search at issue in this case, we concluded that where the warrant referred the reader to "attachment B" in the description of things to be seized, but the police failed to bring the attachment with them at the time of the search, the search was still valid. *See United States v. Pritchett*, 40 Fed. App'x 901, 907 (6th Cir. 2002). As here, the attachment had a sufficient description of the objects at issue but was not with the agents when they conducted their search. And, as here, the attachment was appended to the warrant application at the time of issuance and was subsequently placed under seal. The court held that because the affiant led the search, the agents orally communicated to the occupant what they were looking for before they performed their search and the agents provided him with a receipt afterwards, "[t]he Fourth Amendment's requirements were satisfied." *Id*.

In addition to our circuit and the Eighth Circuit, other appellate courts have rejected similar claims either because they did not state a constitutional violation or because they did not defeat a *Leon* good-faith defense. *See Mazuz v. Maryland*, 442 F.3d 217, 229 (4th Cir. 2006) (holding that the fact that the officer "did not carry the warrant with him during the actual raid" was not unreasonable because "it is undisputed that [the officer] knew at all times that the warrant authorized him to enter room 5110"); *United States v. Jones*, 54 F.3d 1285, 1292 (7th Cir. 1995) (holding that the fact that the affidavit was not at the scene of the search did not violate the Fourth Amendment because "the officer in charge of conducting the search . . . had in his possession the serial numbers of the currency listed in the affidavit, . . . he limited the search to those items described in the warrant, and . . . he made a return to the magistrate that conformed to the warrant and affidavit") (internal quotation omitted); *United States v. Dale*, 991 F.2d 819, 848 (D.C. Cir. 1993) ("While it is not altogether clear that the affidavit accompanied the warrant at the search, we are satisfied that the precautions taken by the government sufficiently limited the discretion of the executing agents," including the precaution that the search "was executed by the affiant pursuant to a specific plan"); *Colorado v. Staton*, 924 P.2d 127, 132 (Colo. 1996) (holding that even where an affidavit is necessary to establish the particularity of the warrant "the execution of the search warrant under the supervision and control of the officer who is the affiant obviates the necessity for the affidavit to accompany the warrant when it is executed"); *cf. United States v. Stefonek*, 179 F.3d 1030, 1033 (7th Cir. 1999) (holding that where the affidavit describing the items to be seized was not with the officers at the time

of the search, evidence should not be excluded under *Leon* because the search "conformed to the particular description in the affidavit of the things to be seized, . . . . [a]mong the agents who executed the search were the very agents who had prepared the application for the warrant . . . [and] they knew the limited scope of the application . . . . The search would thus have been identical in scope, and exactly the same evidence would have been seized, had the warrant complied with the Constitution, which is to say, had the warrant repeated the application's description of the things to be seized").

The Ninth Circuit, we recognize, has charted a different path. It has held that an affidavit necessary to satisfy the particularity requirement not only must be incorporated into the warrant but also must accompany the warrant at the scene. *See, e.g.*, *United States v. McGrew*, 122 F.3d 847, 850 (9th Cir. 1997). But this disagreement among the circuits at the time of the search, to say nothing of the weight of the authority in our circuit and elsewhere favoring the defendants' assessment of these constitutional issues, shows that the agents did not violate clearly established law. *Wilson v. Layne*, 526 U.S. 603, 618 (1999) (noting that when judges "disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy").

*Groh* does not alter this conclusion. The Court could criticize that search as warrantless because the warrant contained a "glaring deficiency" upon issuance recognizable by "any reasonable police officer," 540 U.S. at 564: Namely, in the section calling for "a description of the 'person or property' to be seized," *id*. at 554, the agent typed "single dwelling . . . blue in color," *id.* at 554 n.2. When the magistrate signed the warrant, this description was the only one regarding the items that could be seized. *Id*. Such a warrant, the Court concluded, was "facial[ly] invalid[]," *id.* at 557, and because "the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid," *id.* at 563. Absent any evidence on the face of the warrant that it incorporated the attached affidavit, the Court concluded, the warrant was "manifestly invalid," "warrantless" and thus "constitutionally fatal." *Id*. at 564.

Today's facts offer a poor analogy. At the time of issuance, this warrant specifically incorporated the affidavit ("See Attached Affidavit"), which in turn particularly described the items to be seized. Far from invalidating incorporated affidavits, *Groh* recognized that they may satisfy the particularity requirement, and in this case no one disputes that the warrant upon issuance appropriately incorporated the affidavit and that the magistrate reviewed, approved and signed the warrant and affidavit. At the time of issuance, in marked contrast to *Groh*, no amount of study by the agents or the magistrate would have revealed a constitutional infirmity in the warrant.

Nor did *Groh* say that it was clearly established that a warrant valid upon issuance becomes invalid upon execution if the incorporated affidavit does not accompany the search. The words of the Constitution, to which the Court referred in concluding that the *Groh* warrant was facially invalid, establish particularity requirements that apply by their terms upon the "issu[ance]" of a warrant, not upon the execution of it. Whether a particularized warrant at the time of issuance may become an unparticularized warrant when a cross-referenced affidavit does not accompany the search remains a matter of continued debate among the circuits and remains an issue that neither the text of the Fourth Amendment nor *Groh* resolves. We thus conclude that even if this search had violated the Fourth Amendment right, it did not violate "clearly established" constitutional law, and accordingly the agents should receive qualified immunity.

III.

For these reasons, we affirm.

––––––––––––––––––––––––––––––––––––––––

**CONCURRING IN JUDGMENT**

––––––––––––––––––––––––––––––––––––––––

RONALD LEE GILMAN, Circuit Judge, with whom MARTHA CRAIG DAUGHTREY, Circuit Judge, joins, concurring in the judgment. I concur in the result reached by the majority opinion because I believe that the government officials in this case are entitled to qualified immunity. The majority's discussion of this issue in Part II.B. strikes me as persuasive. I do not believe that the Supreme Court's decision in *Groh v. Ramirez*, 540 U.S. 551, 553, 557 (2004), which was decided three years after the search in question, retroactively caused the Fourth Amendment violation to be clearly established at the time of the search. This is especially so in light of the then-existing Sixth Circuit precedent to the contrary.

But I agree with Part II.A. of Judge Clay's dissent, which explains why Baranski's Fourth Amendment rights were violated. The language and policy reasons set forth in *Groh* indicate that if a warrant fails to list the items to be seized, it is defective unless a list of those items is explicitly incorporated into an affidavit that is present at the scene of the search. Although the Supreme Court has never addressed the question of whether officers are required to present a search warrant to the subject of a search upon request, a warrant's particularity requirement is based on the text of the Constitution and therefore must be complied with even if the subject never views the warrant. In this case, I believe that the search warrant as executed was not sufficiently particular. I therefore concur only in the result reached by the majority.

_____

**DISSENT**

_____

CLAY, Circuit Judge, with whom MARTIN, MOORE, and COLE, Circuit Judges, join, dissenting.  Today, the majority concludes that a valid search warrant need not describe with particularity "the persons or property to be seized," so long as an affidavit, neither attached to the warrant nor present at the scene of the search, describes such items.  Because I believe the majority's position to be in error, I respectfully dissent.  Not only is the use of a such a warrant contrary to the plain language of the Fourth Amendment and the Supreme Court's recent decision in *Groh v. Ramirez*, 540 U.S. 551, 559 (2004), but the use of such a warrant violates an individual's clearly established right to be free from unreasonable searches and seizures.  Accordingly, I would deny Defendants qualified immunity and reach the issue of whether *Heck v. Humphrey,* 512 U.S. 477 (1994), bars Plaintiffs' Fourth Amendment claims.  Inasmuch as *Heck* does not bar all of Plaintiffs' claims, I would reverse the order of the district court and remand for trial.

**I.**

This case comes before us as an appeal of a district court's grant of summary judgment in favor of Defendants.  We review a district court's decision to grant summary judgment *de novo*. *Kalamazoo Acquisitions v. Westfield Ins. Co.,* 395 F.3d 338, 341 (6th Cir. 2005).  Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and a judgment is proper as a matter of law."  Fed. R. Civ. P. 56(c).  "The district court, and this court in its review of the district court, must view the facts and any reasonable inferences drawn from them in the light most favorable to the party against whom judgment was entered."  *Kalamazoo Acquisitions*, 395 F.3d at 342 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The court may neither weigh the evidence nor make credibility determinations. *Logan v. Denny's Inc.,*  259 F.3d 558, 570 (6th Cir. 2001).

**II.**

The majority errs in affirming the district court's determination that Defendants are entitled to qualified immunity in the instant case.  A government official is not entitled to qualified immunity if the plaintiff alleges facts that, if true, establish that the official violated the plaintiff's clearly established federal rights.  *Saucier v. Katz*, 533 U.S. 194, 200-02 (2001); *Wilson v. Layne*, 526 U.S. 603, 614 (1999);  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  In determining whether the plaintiff has adequately alleged that an official violated a clearly established federal right, the Supreme Court has instructed courts first to assess whether the defendant-official violated the plaintiff's federal right, and then address whether the right was clearly established at the time the official acted.  *Saucier*, 533 U.S. at 200-01.  In the instant case, Defendants executed a search of Plaintiffs' property pursuant to a search warrant that failed to state with particularity the items to be seized in violation of the Fourth Amendment.  Inasmuch as this right was clearly established in April 2001, when Defendants executed the search of Plaintiffs' property, Defendants are not entitled to qualified immunity on Plaintiffs' Fourth Amendment claim.

**A.     Constitutional Violation**

The Fourth Amendment prohibits the government from conducting unreasonable searches and seizures.  It states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the places to be searched, and the person or things to be seized.

U.S. Const. amend IV. The long-standing jurisprudence of the Supreme Court makes clear that a search is generally unreasonable within the meaning of the Fourth Amendment unless it is authorized by a *valid* warrant. *Groh*, 540 U.S. at 559 (citing *Payton v. New York*, 445 U.S. 573, 586 (1980)); *Camara v. Muni. Court*, 387 U.S. 523, 528-29 (1967). Importantly, the warrant need not only be valid when issued, but also when the search is conducted, to comply with the reasonableness requirement. *See* Wayne R. LaFave, *Search and Seizure* § 4.7(a), 646-48 (4th ed. 2004) (stating that the execution of a validly issued warrant violates the Fourth Amendment if probable cause dissipates before the execution).

In order to be valid, a warrant must state, with particularity, the items to be seized. U.S. Const. amend IV; *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "'The test for determining whether the description in the warrant is sufficient to satisfy the particularity requirement [of the Fourth Amendment] is whether 'the description is such that the officers can with reasonable effort ascertain and identify the [items] intended [to be seized].'"' *United States v. Watkins*, 179 F.3d 489, 494 (6th Cir. 1999) (quoting *Steele v. United States*, 267 U.S. 498, 503 (1925) and *United States v. Votteller*, 544 F.2d 1355, 1362 (6th Cir. 1976)). A warrant does not meet the Fourth Amendment's particularity clause where it fails to "describe the items to be seized *at all*." *Groh*, 540 U.S. at 558. An adequate description is not rendered invalid, however, simply because it "omits a few items from a list of many," or "misdescribe[s] a few of several items." *Id.* Similarly, mere typographical errors do not render a warrant invalid. *Id.*

The primary purpose of this particularity requirement is to limit the discretion of the officer executing the warrant, thereby preventing the officer from conducting a general search. *Garrison,* 480 U.S. at 84. As the Supreme Court explained in *Camara*, a particular warrant insures that the officer's discretion is limited both by interposing the judgment of a neutral magistrate and by alerting the individual whose person or property is being searched of the boundaries of that officer's legal authority. 387 U.S. at 533.

The warrant at issue in this case was "plainly invalid" inasmuch as it did not describe the items to be seized at all, let alone with particularity. Where the warrant called for a description of the person or property to be seized, it stated "See Attached Affidavit." (J.A. at 91.) No Affidavit was ever attached to the warrant, however, as the affidavit was sealed at the same time the warrant was issued pursuant to the government's request. Thus, the ATF's search was conducted pursuant to an invalid warrant, which failed to describe the property to be seized with particularity in violation of the Fourth Amendment.

The majority erroneously concludes that the warrant was sufficiently particular only by misconstruing the Supreme Court's recent decision in *Groh v. Ramirez*, 540 U.S. at 551. In *Groh*, the Supreme Court addressed the validity of a warrant that failed to describe the items to be seized. *Id.* at 554-55. Where the warrant called for a description of the items to be seized, the petitioning officer entered a description of the property to be searched. *Id.* The Supreme Court held that the warrant was "plainly invalid" despite the fact that the affidavit upon which the warrant was based described the items to be seized with particularity. *Id.* at 557. The Supreme Court reasoned that the "Fourth Amendment by its very terms requires particularity in the warrant, not in the supporting documents." *Id.*

Although the Supreme Court declined to address the issue of accompaniment expressly in *Groh,* as the warrant in *Groh* did not incorporate the affidavit, the *Groh* opinion makes it inescapably

clear that a warrant cannot satisfy the particularity clause of the Fourth Amendment by reference to an affidavit that is not present at the scene of the search. The *Groh* opinion contains numerous statements indicating that an affidavit must actually accompany the warrant in order to cure a deficiency in particularity. For example, the opinion states: "But unless the particular items described in the affidavit are also set forth in the warrant itself (or at least incorporated by reference, *and the affidavit present at the search*) there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit." *Id.* at 560 (emphasis added). Additionally, the opinion provides: "The *presence* of a search warrant served a high function . . . and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched or available for inspection," *id.* at 557 (emphasis added), and "[b]ecause [the executing officer] did not have in his *possession* a warrant particularly describing the things he intended to seize, proceeding with the search was clearly 'unreasonable' under the Fourth Amendment," *id.* at 563 (emphasis added). These statements in *Groh* emphasize that the *description itself* must be present at the scene of the search in order for the search to be reasonable.

Most importantly, however, the rationale behind *Groh* compels the conclusion that a warrant does not satisfy the particularity requirement unless the incorporated affidavit is present at the scene of the search. The *Groh* court explained that the Fourth Amendment requires that a warrant describe with particularity the items to be seized not only to prevent general searches but also to "'assure[] the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.'" *Id.* at 561 (quoting *United States v. Chadwick*, 433 U.S. 1, 9 (1977) (citing *Camara*, 387 U.S. at 532 )). A warrant that incorporates an affidavit that is not present at the search cannot serve this function. *Id.* at 557. Without seeing a copy of the affidavit, the individual whose property is being searched or seized has no way to know the limits of the officer's authority. *See* Larry EchoHawk & Paul EchoHawk, *Curing a Search Warrant That Fails to Describe The Place to be Searched*, 35 Idaho L. Rev. 1, 25-26 (1998) ("Incorporation, however, is not a sufficient limitation by itself. Incorporation merely brings to the attention of those involved the fact that an additional document must be referenced. If the additional document is not available or not in fact used, incorporation may show the intent of the magistrate but may not limit the actual search when it is performed.").

Not surprisingly, at least one scholar who has addressed the meaning of *Groh* reached the same conclusion: that *Groh* renders warrants that fail to describe the items to be seized invalid, unless an affidavit or application describing the items is 1) expressly incorporated, *and* 2) present at the scene of the search. LaFave, *supra*, § 4.6(a), 616. Quoting *Groh*'s reference to the prevailing theory among Courts of Appeals – that a warrant that fails to meet the particularity requirement may be cured only if the underlying affidavit is incorporated *and* attached to the warrant – LaFave concludes:

> [I]t is clear that the Court in *Groh* has accepted and adopted the incorporation/accompanying approach, without specifically saying so. . . . the court hangs this conclusion *not* on the particularity-of-description function of advising the executing officers what to search for and seize, but rather on the function of notice to the person who premises are being searched.

*Id.* Given the tone and overall import of the *Groh* opinion, LaFave's conclusion is clearly correct.

Nonetheless, the majority holds that *Groh* does not apply to the facts of this case because *Groh* did not address accompaniment. According to the majority, "what doomed the warrant in *Groh* was not the existence of a supporting affidavit that particularly described the items to be seized, but the failure of the warrant to cross-reference the affidavit at all." Thus, the majority reasons, *Groh* does not control the facts of this case because the affidavit was properly incorporated.

The problem with the majority's argument is two-fold. First, the issue in this case is not whether the Fourth Amendment's warrant clause permits incorporation; rather, the issue is whether incorporation alone is sufficient to cure a warrant that is invalid for lack of particularity, or whether the incorporated affidavit must accompany the warrant in order to cure its deficiency. Thus, *Groh* is not inapplicable simply because it declined to expressly address accompaniment. Second, *Groh* does not hold that the warrant "was doomed" simply because it failed to cross reference the relevant affidavit. *See Groh*, 540 U.S. at 557. Instead, after noting that the prevailing practice in federal courts of appeals is to allow incorporation where the warrant used express words of reference and the incorporated documents accompanied the warrant, *Groh* explained, "But in this case the warrant did not incorporate other documents by reference, *nor did either the affidavit or the application* (which had been placed under seal) *accompany the warrant.*" *Id.* (emphasis added). Rather, the warrant was "doomed" both because it failed to both reference the affidavit *and* because the affidavit did not accompany the warrant. *See id.*

The sole argument of the majority that carries any weight is that neither the Fourth Amendment nor the Federal Rules of Criminal Procedure always require an executing officer to present a warrant to the individual whose premises are being searched before commencing the search. Thus, the majority reasons, there is no reason to require an incorporated affidavit to be attached to the search warrant and present at the search. This argument, while having facial appeal, does not withstand appropriate analysis inasmuch as the majority's argument is inapplicable to the facts of this case. Although it is clear that the Fourth Amendment and the Federal Rules of Criminal Procedure do not *always* require an officer to present the warrant *prior* to the search, *see United States v. Grubbs*, 547 U.S. — , 126 S. Ct. 1494, 1501 (March 12, 2006), *Groh*, 540 U.S. at 562 n.5, the Supreme Court has expressly reserved the question of whether an officer's refusal to present a warrant to the individual being searched when the individual expressly requests to see the warrant is "reasonable" within the meaning of the Fourth Amendment,[1] *Grubbs*, 126 S. Ct. at 1503 (Souter, J., concurring), *Groh*, 540 U.S. at 562 n.5. In this case, Plaintiffs' employee, Shafizadeh, expressly requested to see the warrant. Thus, it follows that whether Shafizadeh was entitled to see the warrant in the case at hand is undecided, and the majority's reasoning assumes a legal conclusion – that the individual being searched has no right to see the warrant — that may or may not be correct. *Grubbs*, 126 S. Ct. at 1503 (Souter, J., concurring), *Groh*, 540 U.S. at 562 n.5.

Furthermore, a search warrant's presence at the scene of the search does more than simply inform the individual of the officer's authority; it also informs the officers of the limits of their authority. The Sixth Circuit itself has recognized this rationale on several occasions. *See United States v. Pritchett*, 40 Fed. App'x 901, 907 (6th Cir. 2002); *United States v. Gahagan*, 865 F.2d 1490, 1497 (1989). In fact, this rationale is the basis of the Sixth Circuit rule that an incorporated affidavit generally must be attached to the warrant. *See Pritchett*, 40 Fed. App'x at 907; *Gahagan*, 865 F.2d at 1497-99.

Although it is true that the Sixth Circuit formerly recognized an exception to the attachment rule where the officer who authorized the incorporated affidavit also executed the search, *Pritchett*, 40 Fed. App'x at 907; *Gahagan*, 865 F.2d at 1497-99, and this exception would have been applicable on the facts of this case, *Groh* overruled this exception. As will be discussed in more detail *infra*, *Groh* also involved an affidavit authored by the executing officer, and yet the Supreme Court laid out a rule requiring the affidavit to be present at the scene of the search. *See Groh*, 540 U.S. at 554-55,

---

[1] I would hold that an officer's refusal to furnish the warrant to an individual whose premises are being searched upon the individual's request is unreasonable within the meaning of the Fourth Amendment. This conclusion is unnecessary to our holding, however, inasmuch as the Supreme Court's decision in *Groh* squarely controls the outcome of this case. Under *Groh*, the warrant in this case was facially invalid, rendering the search unreasonable within the meaning of the Fourth Amendment. *See Groh*, 540 U.S. at 558. I mention this only to point out the fallacy of the majority's attempt to undermine the notice function of the particularity clause as set forth in *Groh*.

558-63. Moreover, the Supreme Court's rejection of the Sixth Circuit's exception was logical inasmuch as one officer's knowledge of the contents of an incorporated affidavit does not alone insure that the other executing officers have knowledge of its contents. Additionally, relying on an officer's memory of an affidavit seems unnecessarily risky.

Finally, the Supreme Court instructed us in *Groh* that a facially invalid warrant remains invalid, unless cured by proper incorporation and accompaniment. Proper accompaniment requires the incorporated affidavit to be attached to the warrant, or at the very least, present at the scene of the search. The majority is not free to ignore the Supreme Court's instructions simply because it finds the Supreme Court's rationale unpersuasive.

The Supreme Court's recent decision in *United States v. Grubbs*, 126 S. Ct. at 1494, lends no support to the majority's argument. *Id.* The *Grubbs* opinion addresses a different issue. In *Grubbs*, the Supreme Court unanimously held that the Fourth Amendment did not require the "triggering conditions" of anticipatory search warrants to be set forth on the face of the warrant. *Id.* at 1500. The Supreme Court reasoned that the Fourth Amendment "specifies only two matters that must be particularly described in the warrant: 'the place to be searched' and 'the persons or things to be seized.'" *Id.* Inasmuch as the text of Fourth Amendment does not require triggering conditions to be set forth on the face of a warrant, the Supreme Court declined to read such a requirement into the Fourth Amendment for the purpose of assuring the person being searched of the officer's legal authority. *Id.* at 1501. The Court passingly noted that "this argument assumes that the executing officer must present the property owner with a copy of the warrant before conducting his search [but] in fact . . . neither the Fourth Amendment nor Rule 41 impose such a requirement." *Id.* at 1501.

The Supreme Court's rejection of the defendant's argument in *Grubbs* – that the notice function of the particularity clause requires triggering conditions to be set forth on the face of a warrant – does not alter the relevance of the particularity clause's notice function in this case. A crucial distinction between the case at hand and *Grubbs* is that this case, like *Groh*, addresses "items to be seized" whereas *Grubbs* addressed "triggering conditions." The text of the Constitution requires the items to be seized to be set forth on the face of a warrant. U.S. Const. amend. IV. In contrast, the text of the Constitution does not require that "triggering conditions" be set forth on the face of a warrant. *Id.* Inasmuch as the text of the Fourth Amendment does not require "triggering conditions" to be set forth on the face of a warrant, the notice function of the particularity clause is an insufficient reason to impose such a requirement. *See Grubbs*, 126 S. Ct. at 1500-01.

To say that the notice function of the particularity clause is an insufficiently substantial reason to create an extra-textual requirement for warrants, however, is not to say that an existing textual requirement of the particularity clause does not protect an individual's interest in being notified of the officer's authority and its limits. *See id.* at 1503 (Souter, J., concurring). In other words, *Grubbs* does not prohibit this Court from considering the notice function of the particularity clause in determining how best to implement the Fourth Amendment's dictate that "items to be seized" be set forth on a warrant because *Grubbs* addresses not whether the notice function should be considered when determining how to implement the Fourth Amendment's express dictate that "items to be seized" be set forth on the face of a warrant," but whether the notice function is a sufficiently important reason to impose additional, extra-textual requirements. *Id.* at 1501. Rather, that is the province of *Groh*, and *Groh* has held that the notice function of the particularity clause is relevant to whether a warrant complies with the particularity clause's textual requirement that items "to be seized" be set forth on the face of the warrant. *See Groh*, 540 U.S. at 557-563 (discussing the purpose of the particularity clause). Because the instant case involves this textual requirement of listing the items to be seized, *Groh* and not *Grubbs* controls. Accordingly, this Court should consider the notice function of the particularity clause in determining whether the warrant in this case was facially deficient. *See id.*

The weakness of the majority's position is evidenced by its attempt to buttress its primary argument, the argument addressed above, with collateral arguments. For example, the majority contends that the Constitution does not require officers to leave warrants at the scene of the search even after the search is completed because it would be impossible to do so in a wiretap search. (Maj. Op. at 17-18.) Exceptions, however, do not create the rule. The Constitution has countless requirements for which the Supreme Court makes exceptions. In fact, the warrant requirement itself is open to numerous exceptions, including exigent circumstances. *See, e.g., Brigham City v. Stuart*, 547 U.S. —, — S. Ct —, 2006 WL1374566, at *4 (2006) (exigent circumstances); *Georgia v. Randolph*, 547 U.S. —,126 S. Ct. 1515, 1520 (2006) (consent); *Payton v. New York*, 445 U.S. 573, 576 (1980) (prohibiting warrantless entry to suspect's home in order to make a routine felony arrest). Thus, to hold that the Constitution does not require officers to leave warrants at the scene of the search after they complete the search simply because it would be impractical to do so in a narrow set of circumstances defies Supreme Court precedent and logic.

Furthermore, although the majority attempts to obscure this fact, the Supreme Court has not held that the Constitution never requires officers to leave warrants at the scene of the search after the search is completed, but only that it does not require officers to present the warrant *prior* to the search. *See Grubbs*, 126 S. Ct. at 1503 (Souter, J., concurring), *Groh*, 540 U.S. at 562 n.5. Similarly, as noted above, the Supreme Court has expressly reserved the question of whether the Fourth Amendment requires an officer to present a warrant upon request. *Id*.

Additionally, the majority attempts to distinguish the present case from *Groh* by arguing as follows:

> *Groh* turns on the facial invalidity of the warrant, and not the manner in which the officers conducted the search. . . . [T]he [Supreme] Court indicated that the constitutional violation at issue was the facial insufficiency of the warrant, not the failure to incorporate the affidavit *and* bring it during the search.

(Maj. Op. at 8.) However, the failure to incorporate the affidavit and have it accompany the warrant rendered the warrant in *Groh* facially invalid. Thus, attempting to distinguish between "facial invalidity" and failure to incorporate the affidavit and have it present at the search makes no sense.

The majority also makes much of the fact that a "neutral magistrate" signed the warrant after reading the affidavit. This is entirely beside the point. In addition to satisfying only one purpose of the particularity clause, as discussed above, this argument ignores the fact that the Constitution not only requires a neutral magistrate's determination on probable cause, but prescribes the manner in which we insure that this requirement is met by requiring the neutral magistrate to list, on the face of warrant, the items to be seized. *See* U.S. Const. amend. IV. This Court is not free to relieve the magistrate of that constitutional obligation simply because it believes another method is equally adequate.

Finally, the majority inexplicably and repeatedly quotes *Dalia v. United States*, 441 U.S. 238 (1979), for the proposition that "a search conducted in accordance with a valid warrant does not become warrantless, and therefore 'presumptively unreasonable,' due to the manner in which the officers conducted the search." (Maj. Op. at 6.) The argument is wholly specious. No one is contending that the search in this case was unreasonable because of the manner in which the search was conducted, unless one construes that manner as pursuant to an invalid warrant. The warrant in this case was facially invalid. It did not state the items to be seized. Nor was it cured by proper incorporation and accompaniment. Therefore, the search violated the Fourth Amendment.

In reaching the opposite conclusion, the majority loses sight of the fact that Defendants in this case could have easily avoided this entire suit and its attendant problems simply by transcribing the

items listed in the affidavit onto the warrant or onto a list attached to the warrant. Because Defendants failed to complete this simple task, Plaintiffs were forced to move a federal court to unseal the affidavit, and consequently, did not receive a copy of the affidavit until one and a half years after the search occurred because the district court in this case would not unseal the affidavit until after Plaintiff Baranski was convicted. This Court would hardly be imposing any great burden on law enforcement officers by holding that the Defendants' conduct violated the Fourth Amendment. Such a holding would, however, go a long way in assuring the American people that they live in a country governed by the rule of law.

**B.      Clearly Established Right**

Not only does the Supreme Court's decision in *Groh* compel the conclusion that Defendants violated Plaintiffs' Fourth Amendment rights, but *Groh* also requires this Court to deny Defendants qualified immunity for the violation. After the Supreme Court determined that the officers in *Groh* violated the particularity clause of the Fourth Amendment, the Court further held that the officer in charge of the search was not entitled to qualified immunity. Applying the qualified immunity test set forth in *Saucier v. Katz*, 533 U.S. at 194, the Supreme Court held that the defendant was not entitled to qualified immunity because the right at issue – the right to be searched only pursuant to a warrant describing with particularity the items to be seized – was clearly established. The right was clearly established because it is set forth in the text of the Constitution itself. Thus the Court reasoned "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Groh*, 540 U.S. at 563 (citing *Saucier*, 533 U.S. at 194).

The very same clearly established constitutional right is at issue in this case. That is, Defendants in this case also violated Plaintiffs' Fourth Amendment right to be searched only pursuant to a warrant describing with particularity the items to be seized. Here too, a reasonable officer would have recognized that his conduct was unlawful because, as in *Groh*, the warrant was deficient on its face. The warrant utterly failed to describe any items that the officers intended to seize. Instead, it referred the reader to an affidavit that the executing officer intentionally had placed under seal. Because the executing officer himself had the affidavit placed under seal, he must have known that the affidavit was not attached to the warrant or available at the scene of the search. Moreover, any reading of the warrant would necessarily draw attention to the fact that no affidavit describing the items to be seized was attached. Thus, any officer who read the warrant would be forced to recognize that the warrant at the scene did not contain any description of the items to be seized and that the warrant was therefore deficient.

Even assuming the facial invalidity of the warrant in this case was somehow less glaring than the deficiency in *Groh*, Defendants are still not entitled to qualified immunity. A defendant is not entitled to qualified immunity simply because the official action in question has not previously been declared unlawful. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A defendant will also be denied qualified immunity if "in light of pre-existing law the unlawfulness [of the conduct is] apparent." *Id.*; *see also Wilson v. Layne*, 526 U.S. 603, 615 (1999) (quoting *Anderson*). *Groh* makes it indisputably clear that pre-existing law rendered the unlawfulness of Defendants' actions apparent. According to *Groh*, one purpose of the particularity requirement is to inform the individual whose person or property is being searched of the limits of the executing officer's authority. *Groh*, 540 U.S. at 561-62. Moreover, *Groh* recognized that this purpose is clearly established in Supreme Court case law, stating: "[the Supreme Court has] long held . . . that the purpose of the particularity requirement is not limited to the prevention of general searches. A particular warrant also 'assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to

search, and the limits of his power to search.'"[2]  *Id.* at 561 (quoting *United States v. Chadwick*, 433 U.S. 1, 9 (1977), *abrogated on other grounds*, *California v. Acevado*, 500 U.S. 565 (1991)).  Because existing Supreme Court case law made clear that a purpose of the warrant requirement is to inform the individual subject of the search of the limits of the officer's authority, a reasonable officer would recognize the necessity of providing the individual with a warrant listing the items to be seized.

In light of *Groh*'s affirmation of the clearly established nature of the right at issue in this case, Defendant's reliance on this Circuit's pre-*Groh* case law is unavailing.  Prior to *Groh*, the law of this Circuit admitted an exception to the general rule that to be properly incorporated an affidavit must be attached to the warrant or present at the scene: where the officer who drafted the affidavit also executed the search, the affidavit did not need to be attached or present.  *See United States v. Brown*, 49 F.3d 1162 (6th Cir. 1995).  *Groh* has overruled this exception, however, both for the purposes of the constitutionality of the search and the officer's entitlement to qualified immunity.  As discussed above, the officer in *Groh* both drafted the affidavit and executed the search.  Nonetheless, the Supreme Court made clear that the affidavit was not properly incorporated because the warrant contained no words of incorporation *and* the affidavit was neither attached to the warrant nor present at the scene of the search.  Moreover, *Groh* held not only that the affidavit must be attached to the warrant or present at the scene, but that failure to do so violated a clearly established constitutional right.  The *Groh* court reached this decision by holding both that the right to a particular warrant was clearly established and that the basis for the right – informing an individual of the officer's lawful authority and limits of the search – was clearly established.  Inasmuch as the *Groh* search occurred in 1997, it follows that *Groh* applies to all searches occurring after 1997.  The search in this case occurred in 2001, and it therefore follows that it is governed by *Groh* and not pre-*Groh* circuit case law.  Consequently, I would hold that Defendants are not entitled to qualified immunity.

### III.

Defendants argue that even if they are not entitled to qualified immunity, that the doctrine enunciated in *Heck v. Humphrey*, 512 U.S. at 480, requires this Court to dismiss Plaintiffs' Fourth Amendment claims because a finding in favor of Plaintiffs would necessarily imply the invalidity of Plaintiff Baranski's conviction for conspiracy and his corresponding sentence. Plaintiff Baranski was convicted in federal district court of conspiring to import machine guns in violation 26 U.S.C. § 5861(1).  As a part of his sentence, the district court entered an order, requiring Baranski to forfeit the illegally imported machine guns, which were being stored at Plaintiff Pars' warehouse. According to Defendants, a finding that the search in this case was illegal would necessarily imply that Baranski's conviction and sentence are invalid because evidence in the search was used to convict Baranski and later confiscated as a part of his sentence.   Contrary to Defendants' contentions, a finding in favor of Plaintiffs on their Fourth Amendment claims would not necessarily imply the invalidity of Baranski's conviction. Thus, I would not dismiss Plaintiffs' claims pursuant to *Heck v. Humphrey*, 512 U.S. at 480.

In *Heck v. Humphrey*, the Supreme Court held that habeas actions, and not § 1983 actions, were the appropriate vehicle for challenging the lawfulness of criminal judgments.  512 U.S. at 480-89.  Accordingly, the Court concluded that claims for relief which "necessarily imply the invalidity of [a] conviction or sentence" are not cognizable under § 1983.  *Id.* at 487.  The Court made sure to clarify, however, that not all Fourth Amendment claims challenging a search that produced evidence

---

[2]To the extent *Grubbs* could be interpreted as questioning this rationale, it is inapplicable to our qualified immunity analysis because it was not decided until several years after the search in question occurred.   Unlike *Groh*, the year in which *Grubbs* was decided is dispositive of its applicability to the facts of this case because *Grubbs* does not purport to apply "clearly established" law of 2001 but rather the law of 2005.   *Groh* in contrast contains a qualified immunity analysis and thus applied law clearly established at the time of the search.

introduced in criminal proceedings "necessarily imply the invalidity of [a] conviction." *Id.* The Court explained:

> [A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, *see Murray v. United States,* 487 U.S. 533, 539, 108 S. Ct. 2529, 2534, 101 L. Ed.2d 472 (1988), and especially harmless error, see *Arizona v. Fulminante,* 499 U.S. 279, 307-308, 111 S. Ct. 1246, 1263-1264, 113 L. Ed.2d 302 (1991), such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful.

*Id.* at 487 n.7 (emphasis in original). *Heck*'s litigation bar applies with equal force to *Bivens* actions. *Robinson v. Jones*, 142 F.3d 905, 906-07 (6th Cir. 1998).

A hypothetical judgment in this litigation that the search of Pars' warehouse and the seizure of Baranski's machine guns was unconstitutional would not "necessarily imply" the invalidity of Baranski's criminal conviction for conspiracy to illegally import machine guns. The district court in Baranski's criminal case denied the motion to suppress the machine guns, but indicated that it did "not necessarily believe" that the machine guns were even relevant to the case. On appeal, the Eighth Circuit held that "[t]he warrant should not have been suppressed for lack of particularity" because "the warrant referred to a sealed affidavit that described the weapons," *Baranski*, 2003 WL 22176185, at *1 (citing *United States v. Cherna*, 184 F.3d 403, 412-14 (5th Cir. 1999)), but added that even if the weapons should have been suppressed, their admission was harmless error because the documents and testimony proved the government's case. *Id.* Consequently, a judgment in this case that the search and seizure was unconstitutional would not *necessarily* imply the invalidity of Baranski's conviction. *Cf. Heck*, 512 U.S. at 487 n.7 (opining that "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction . . . [b]ecause of doctrines like . . . harmless error[.]") (citations omitted).

The analysis does not end here, however, because *Heck* also requires dismissal of a lawsuit that would necessarily imply the invalidity of Baranski's sentence or "any outstanding criminal judgment" against him. *Heck*, 512 U.S. at 487. The district court entered an order of criminal forfeiture pursuant to the procedures set forth at 21 U.S.C. § 853 after finding that the guns and accessories described in the indictment were property used or intended to be used in a manner to facilitate the commission of the crime for which defendant was convicted. *See* 26 U.S.C. § 5872(a) (providing that "[a]ny firearm involved in any violation of the provisions of this chapter shall be subject to seizure and forfeiture"); 28 U.S.C. § 2461(c) (providing that where forfeiture of property is authorized by statute but no specific statutory provision is made for criminal forfeiture upon conviction, the government may include the forfeiture in the indictment and upon conviction, the court shall order the forfeiture of the property in accordance with the procedures set forth in 21 U.S.C. § 853); 21 U.S.C. § 853 (providing that the court, "in imposing sentence," shall order criminal forfeiture as to, *inter alia*, property used or intended to facilitate the commission of a crime). The Eighth Circuit affirmed the forfeiture order, holding that the evidence supported the district court's finding that the weapons were intended to be used to commit or facilitate the commission of the charged crime. *Baranski*, 2003 WL 22176185, at *2 (citing 21 U.S.C. § 853(a)(2)).

Because "[f]orfeiture is an element of the sentence imposed following conviction," *Libretti v. United States*, 516 U.S. 29, 38-39 (1995) (emphasis omitted) (interpreting 21 U.S.C. § 853(a)),[3] Baranski seeks to impugn part of his criminal sentence by obtaining an injunction compelling the return of seized firearms, in direct contravention of the forfeiture order. Accordingly, *Heck* bars Baranski's *Bivens* claim to the extent he seeks return of the forfeited machine guns.

Baranski seeks more than just return of the weapons. His complaint requests damages resulting from the fact that the government's seizure of the weapons placed him "in an economically disadvantaged position in relation to his competitors who are directly benefitting from the actions of the defendants, and the absence of [Baranski] from the marketplace." (J.A. 22 (Complaint at ¶ 73)); *see also id.* ("The taking [of Baranski's machine guns in violation of the Fourth Amendment], has . . . impaired plaintiffs' ability to earn a lawful income from legitimate activities for which they have been licensed and authorized by the United States Treasury."); *id.* at 35 (prayer for relief at ¶ 5) (seeking general damages of $186,100). He also seeks compensatory damages for, *inter alia*, impairment of reputation and mental anguish, as well as punitive damages. *See id.* at 35 (prayer for relief at ¶ 7) (seeking compensatory damages for impairment of reputation, mental anguish, lost business opportunity as a result of Defendants' actions, and loss of use of property); *id.* (prayer for relief at ¶ 9) (seeking punitive damages for constitutional violations).

*Heck* bars Baranski's *Bivens* claim to the extent he seeks damages for the lost economic value of the weapons, whether measured in terms of their appraised value at the time of the unlawful seizure or the potential value Baranski could have received for the weapons had he been able to sell them on the open market at some future time. An award of such damages would directly contravene the forfeiture order, which is premised on the assumption that Baranski no longer has proper title to, and therefore no continuing economic interest in, those weapons. The same logic applies to Baranski's claim for damages premised on loss of use of the weapons. Because the forfeiture order determined that Baranski no longer owns the weapons, he cannot seek damages for loss of use of those weapons without running afoul of *Heck*.

Baranski's request for damages for his injured reputation and mental anguish, as well as his request for punitive damages, are different matters entirely. An award of such damages would not necessarily imply the invalidity of the criminal forfeiture order. The government knew about the existence and location of the forfeited weapons prior to their unlawful seizure from Pars' warehouse because Baranski had told ATF Agent Johnson about them during an interview. Defendants could have sought and obtained an order forfeiting those weapons without seizing the weapons. Accordingly, the validity of the forfeiture order is not dependent upon the legality of the government's seizure of those weapons. *Cf. One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania,* 380 U.S. 693, 699-703 (1965) (reversing order forfeiting automobile used to transport untaxed liquor in violation of state law, because search of car potentially violated the Fourth Amendment and the state could not establish an illegal use of the car without using evidence resulting from the allegedly unconstitutional search). It follows that a judgment in this case that Defendants' seizure of the weapons violated Baranski's Fourth Amendment rights would not necessarily imply the validity of the forfeiture order. Further, no *Heck* problem arises, as long as Baranski is limited to recovering damages only for injuries that would not otherwise have arisen from the lawful forfeiture of his weapons. Although he cannot seek the replacement value of the weapons or lost profits due to his dispossession of the weapons, he can seek damages for impaired reputation and mental anguish as well as punitive damages attributable to the means by which Defendants effected the search and seizure. An award of damages for these injuries would not necessarily imply the

---

[3]*See also* FED. R. CRIM. P. 32.2(b)(3) ("At sentencing . . . the order of forfeiture becomes final as to the defendant and must be made a part of the sentence and be included in the judgment.").

invalidity of the forfeiture order, the validity of which is entirely independent of the method of the search and seizure.

Although Defendants also raise the *Heck* bar in opposition to Pars' *Bivens* claim, we need not resort to *Heck* to the extent Pars seeks the return of the forfeited machine guns. *See* J.A. 35 (Complaint, prayer for relief at ¶ 3) (requesting an order compelling the return of the machine guns to Pars' warehouse). Pars was notified of the forfeiture proceedings in Baranski's criminal case, and therefore Pars, as a third party, had the opportunity to assert a legal interest in Baranski's firearms and petition the district court for a hearing to adjudicate the validity of its asserted interest. *See* FED. R. CRIM. P. 32.2(c)(1); 21 U.S.C. § 853(n)(2). The district court below noted that Pars had filed a claim of ownership in Baranski's forfeiture proceedings in the Eastern District of Missouri, but there is no information in the Joint Appendix indicating what type of information, if any, Pars submitted to support its claim. Pars could have appealed an adverse decision in the forfeiture proceedings, separate and apart from Baranski's right to appeal his criminal conviction and sentence. *E.g.*, *United States v. Harris*, 246 F.3d 566, 567 (6th Cir. 2001); *see also* FED. R. CRIM. P. 32.2(c)(4) ("An ancillary proceeding is not part of sentencing."). There is no indication in the record that Pars ever took such an appeal, and as best as we can tell, the forfeiture order became final, giving the United States clear title to Baranski's firearms. FED. R. CRIM. P. 32.2(c)(2); 28 U.S.C. § 853(n)(7). Thus, Pars' claim for return of the weapons is foreclosed by operation of the forfeiture statute, and Pars cannot now bring a collateral cause of action to again lay claim to Baranski's firearms.

Pars' *Bivens* claim is not limited to a request for the return of the machine guns. Pars' complaint also seeks compensatory and punitive damages directly related to the government's seizure of those weapons. *See* J.A. 22 (Complaint at ¶ 73) ("The taking [of Baranski's machine guns in violation of the Fourth Amendment], has . . . impaired plaintiffs' ability to earn a lawful income from legitimate activities for which they have been licensed and authorized by the United States Treasury."); *id.* at 35 (prayer for relief at ¶ 5) (seeking general damages of $186,100); *id.* at 35 (prayer for relief at ¶ 7) (seeking compensatory damages for impairment of reputation, lost business opportunity as a result of Defendants' actions, and loss of use of property); *id.* at 35 (prayer for relief at ¶ 9) (seeking punitive damages for constitutional violations). Apart from Pars' asserted ownership interest in Baranski's firearms, Pars allegedly had contractual interests connected to those weapons as a bailee who expected compensation for storing them in its warehouse. Pars also allegedly had an interest in being free from unlawful governmental intrusions onto its property. Forfeiture proceedings, however, are not designed to compensate claimants for injuries to these types of interests. The forfeiture proceedings connected with Baranski's criminal case could address only the proper disposition of Baranski's firearms. *See* 26 U.S.C. § 5872(a). Pars would not have been permitted to intervene in those proceedings for any reason other than to stake a claim to those firearms. *See* 21 U.S.C. § 853(k)(1) (providing that "no party claiming an interest in property subject to forfeiture . . . may . . . intervene in a trial or appeal of a criminal case involving the forfeiture of such property," other than to assert a legal interest in the property subject to forfeiture).

The question is whether *Heck* nevertheless bars Pars' *Bivens* claim for compensatory and punitive damages. *Heck* involved an action under 42 U.S.C. § 1983 against county prosecutors and a state police investigator, seeking damages for their allegedly unconstitutional conduct that led to the plaintiff's conviction. *Heck*, 512 U.S. at 479. The Court held that "when a state *prisoner* seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence[.]" *Id.* at 487 (emphasis added). The Court added that "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment *against the plaintiff*, the action should be allowed to proceed[.]" *Id.* (emphasis omitted and another emphasis added). The Court expressed particular concern over affording criminal defendants another opportunity to collaterally attack their criminal convictions. *Id.* at 484-85 ("This Court has long expressed . . . concerns for finality and consistency and has generally declined to expand opportunities for collateral

attack[.]") (citations omitted). Pars, however, is not a prisoner or a former prisoner, and a successful litigation would not demonstrate the invalidity of any outstanding criminal judgment against Pars. Thus, nothing in *Heck* contemplates extending the bar against civil damages actions to third parties like Pars, whose prior criminal judgments are not at issue.

Moreover, extending *Heck* to Pars would be fundamentally unfair. As explained above, Defendants searched Pars' warehouse in reliance on a facially defective search warrant, and their reliance was not objectively reasonable. Yet, barring Pars' claim pursuant to *Heck* would leave Pars with effectively no remedy for the unconstitutional intrusion. Although the constitutionality of the search was addressed by the courts of the Eighth Circuit in Baranski's criminal case, Pars had no opportunity to participate in the resolution of that issue.[4] I am unaware of any statutory provision that would have afforded Pars the right to intervene in Baranski's criminal trial in order to join his suppression motion. Even if Pars had been permitted to intervene, its constitutional claims for damages against the individual ATF agents could not have been adjudicated in that forum because the agents were not parties to Baranski's criminal proceeding. I also question the efficacy and propriety of trying a criminal action simultaneously with an action for damages. For these reasons, I would also hold that *Heck* does not bar Pars' *Bivens* claims for damages against Defendants.

As a purely factual matter, Pars' ability to recover damages flowing from the unlawful seizure of the weapons may be greatly circumscribed. The weapons have been forfeited to the government, and that criminal judgment is unassailable. Therefore, to the extent Pars seeks damages for loss of use of the weapons or lost storage costs attributable to their unlawful seizure, Pars' recovery is temporally limited by the inevitable, lawful forfeiture of those weapons. Pars also can seek compensatory damages for alleged injuries to its reputation and any other financial injury that flowed from the unlawful seizure, as long as the injuries can be distinguished from harm it inevitably would have suffered due to the subsequent, lawful forfeiture of Baranski's weapons. Like Baranski, Pars may also seek punitive damages against Defendants for the manner in which they executed the search and seizure. Given the state of the record, I express no opinion as to whether Pars or Baranski ultimately would be able to marshal sufficient evidence to prove a compensable injury or even to create a genuine issue of material fact that they suffered a compensable injury. They may be entitled only to an award of nominal damages for their constitutional injuries. Those are issues that would be best left to the district court to decide on remand.

Finally, I acknowledge that my dissenting opinion on the Fourth Amendment issue appears to be at odds with the Eighth Circuit's holding on the same set of operative facts. Were Plaintiffs to proceed to trial and prevail, Defendants (in their individual capacities) would be found to have flouted the Fourth Amendment, even though they (in their official capacities) previously were found to have acted lawfully. I would note, however, that at the time the Eighth Circuit rendered its decision in *Baranski*, it did not have the benefit of the Supreme Court's *Groh* decision. In any event, the holding proposed by the dissent in the instant case would be preferable to the alternative of leaving individuals and property owners who have suffered patently unconstitutional intrusions without any remedy. I would therefore hold that an action for damages, as circumscribed above, would not necessarily demonstrate the invalidity of any criminal judgment and, consequently, is not barred by *Heck*.

---

[4]Conceivably, the prejudice to Pars would be even more severe if Baranski's criminal counsel had been ineffective, such as by failing to advance colorable arguments concerning the constitutionality of the search and seizure. Indeed, if Baranski's attorney had failed to contest the search and seizure, the Fourth Amendment issue would not have been litigated at all.

## IV.

For all the foregoing reasons, I would reverse the district court's dismissal of Plaintiffs' *Bivens* claims on qualified immunity grounds; affirm the dismissal of Plaintiffs' *Bivens* claims to the extent they seek (a) return of the firearms that were forfeited after Baranski's criminal conviction or (b) damages attributable to the inevitable, lawful forfeiture of those firearms; and reverse the order of dismissal with respect to Plaintiffs' claims for compensatory damages that arose from Defendants' unlawful search and seizure, but that were not otherwise an inevitable result of the subsequent forfeiture. I would also reverse the dismissal of Plaintiffs' claims for punitive damages.